Renee WASSERMAN, Plaintiff,

v.

Daniel R. GLICKMAN, et al., Defendants.

No. CV 93–5767.

United States District Court,
E.D. New York.

April 11, 1995.

Nassau/Suffolk Law Services Committee, Inc. by John R. McGeehan, Hempstead, NY, for plaintiff.

Zachary W. Carter, U.S. Atty. by Sarah J. Lum, Asst. U.S. Atty., Brooklyn, NY, for defendant Glickman.

Dennis Vacco, New York State Atty. Gen. by Martha L. Luft, Asst. Atty. Gen., Hauppauge, NY, for defendant Dowling.

Owen B. Walsh, Nassau County Atty. by Judith L. Cashman, Asst. County Atty., Mineola, NY, for defendant Lapi: ʰ⁄ .

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Renee Wasserman brings this action against defendants Secretary of the United States Department of Agriculture (the "Secretary"), Commissioner of the New York State Department of Social Services (the "New York Commissioner"), and Commissioner of the Nassau County Department of Social Services (the "Nassau County Commissioner") for declaratory and injunctive relief challenging defendants' denial of her application for food stamps. Presently before the Court are defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, and plaintiff's cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons below, defendants' motions are granted, and plaintiff's cross-motion is denied.

## I. BACKGROUND

The Food Stamp Act (the "Act"), 7 U.S.C. § 2011, et seq., is a federal program created to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." Id. § 2011. Participants receive coupons that can be used to purchase food from approved retail food stores. Id. § 2013. The Secretary is charged with establishing uniform national eligibility standards for the food stamp program. Id. § 2014(b). The program is administered by state agencies, like the New York State Department of Social Services ("NYDSS"), which determine eligibility, figure the appropriate amount of stamps to issue, and issue the stamps. Id. § 2020. The state agencies, in carrying out their duties under the Act, must adhere to regulations promulgated by the Secretary to implement the Act. Id. § 2013(c). The NYDSS carries out its responsibilities through local agencies, such as the Nassau County Department of Social Services ("NCDSS").

The requirements for food stamp eligibility are set forth in § 2014. Section 2014(c) establishes a "gross income standard," above which households are ineligible to participate in the food stamp program. See id. § 2014(c). Section 2014(d) and (e) prescribes exclusions from household income and the

method for determining the standard deduction in computing household income. *See id.* § 2014(d), (e).

Section 2014(g) establishes an "allowable financial resource" limit for eligibility, directing the Secretary to "prescribe the types and allowable amounts of financial resources ... an eligible household may own," but requiring the Secretary to "assure that a household otherwise eligible to participate in the food stamp program will not be eligible to participate if its resources exceed $2,000, or, in the case of a household which consists of or includes a member who is 60 years of age or older, if its resources exceed $3,000." *Id.* § 2014(g)(1). The Act directs, however, that certain resources be included in, or excluded from, financial resources in determining eligibility. Among the resources specifically addressed are licensed vehicles. Since 1977, and through the time plaintiff applied for food stamps, the Act directed the Secretary to include in financial resources

> any licensed vehicle (other than one used to produce earned income or that is necessary for transportation of a physically disabled household member and any other property, real or personal, to the extent that it is directly related to the maintenance or use of such vehicle) used for household transportation or used to obtain or continue employment to the extent that the fair market value of any such vehicle exceeds $4,500.

*Id.* § 2014(g)(2).[1]

United States Department of Agriculture ("USDA") regulations implementing § 2014(g)(2) provide that, subject to the exclusion of certain vehicles,[2] a portion of a licensed vehicle's fair market value which exceeds the vehicle limitation

shall be attributed in full toward the household's resource level, regardless of any encumbrances on the vehicles ..., and regardless of the amount of the household's investment in the vehicle, and regardless of whether or not the vehicle is used to transport household members to and from employment.

7 C.F.R. § 273.8(h)(3). The regulation further provides that all licensed vehicles are to be evaluated for equity value, except for one vehicle per household, vehicles excluded under 7 C.F.R. § 273.8(h)(1), or vehicles necessary for employment reasons; the equity value of any such nonexcluded licensed vehicle is used in calculating a household's financial resources. *Id.* § 273.8(h)(4). However, if a licensed vehicle. is assigned a fair market value in excess of $4,500 and an equity value, only the greater of the two is counted in the financial resource determination. *Id.* § 273.8(h)(5). As the regulation summarizes:

> [E]ach licensed vehicle shall be handled as follows: First it will be evaluated to determine if it is exempt as an income producer or as a home. If not exempt, it will be evaluated to determine if its fair market value exceeds $4,500. If worth more than $4,500, the portion in excess of $4,500 for each vehicle will be counted as a resource. The vehicle will also be evaluated to see if it is equity exempt as the household's only vehicle or necessary for employment reasons. If not equity exempt, the equity value will be counted as a resource. If the vehicle has a countable market value of more than $4,500 and also has a countable equity value, only the greater of the two amounts shall be counted as a resource.

*Id.* § 273.8(h)(6).

In 1990, Congress added subsection (g)(5) to § 2014 to exclude certain "inaccessible

1. Subsection (g)(2) also directs that the following be included in household resources: "any boats, snowmobiles, and airplanes used for recreational purposes, any vacation homes, any mobile homes used primarily for vacation purposes, ... and any saving or retirement accounts (including individual accounts)." 7 U.S.C. § 2014(g)(2). In 1993, Congress amended § 2014(g)(2) to increase the vehicle limitation to $4,550 on September 1, 1994, to $4,600 beginning October 1, 1995, and to $5,000 beginning October 1, 1996; the vehicle limitation is to be adjusted as of October 1, 1986 and on each October 1 thereafter to reflect changes in the new car component

of the Consumer Price Index for All Urban Consumers. *See* Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 13923, 107 Stat. 313, 675 (1993).

2. Excluded vehicles include, *inter alia*, any vehicle used primarily for income producing, any vehicle necessary for long distance travel—other than daily commuting—essential for employment of a household member, and any vehicle used to transport a physically disabled household member. 7 C.F.R. § 273.8(h)(1).

resources" from the financial resource determination. The 1990 amendment provided:

> The Secretary shall promulgate rules by which State agencies shall develop standards for identifying kinds of resources that, as a practical matter, the household is unlikely to be able to sell for any significant return because the household's interest is relatively slight or because the cost of selling the household's interest would be relatively great. Resources so identified shall be excluded as inaccessible resources.

Pub.L. No. 101–624, § 1719, 104 Stat. 3359, 3785–86 (1990) (codified as amended at 7 U.S.C. § 2014(g)(5)). On August 13, 1991, the USDA issued a proposed regulation to implement this provision. The proposed regulation would have defined an inaccessible resource as one "with an expected sale price of $2,000 or less where the cost of selling the resource exceeds 75% of the expected sale price." 56 Fed.Reg. 40166 (1991) (proposed Aug. 13, 1991).

Public and congressional criticism of the proposed regulation eventually led to its withdrawal by the Secretary, *see, e.g.,* 137 Cong.Rec. S18325–26 (statement of Sen. Leahy, Nov. 26, 1991) ("No arbitrary sale-price or percent-of-value test may be imposed."), and to further amendment of § 2014(g)(5) by Congress in December 1991. The 1991 amendment added, in relevant part, the following to § 2014(g)(5):

> A resource shall be so identified if its sale or other disposition is unlikely to produce any significant amount of funds for the support of the household. . . .

Pub.L. No. 102–237, § 904, 105 Stat. 1818, 1884–85 (1991). After the 1991 amendment to § 2014(g)(5), the Secretary issued an "Administrative Notice" advising state food stamp agencies to exercise their "best judgment" in applying the inaccessible resources provision until rulemaking is accomplished. Thereafter, on January 31, 1992, USDA Food and Nutrition Service Deputy Administrator Andrew P. Hornsby, Jr., under the Secretary's authority, sent a memorandum to Food and Nutrition Service Regional Offices stating that § 2014(g)(5) does not apply to motor vehicles (the "Interim Directive"). The regional offices, in turn, disseminated the Interim Directive to state agencies administering the food stamp program.

As alleged in the complaint, in August 1992, plaintiff applied for food stamps to the NCDSS. Plaintiff then owned a 1990 Honda Accord with an approximate fair market value of $7,300. As of August 21, 1992, plaintiff owed $6,491.80 to the bank that financed her purchase of the Honda. In October 1992, her food stamp application was denied because the excess of the fair market value of the Honda over $4,500 was included in her financial resources pursuant to § 2014(g)(2), and, therefore, her financial resources exceeded the applicable allowable amount— $2,000.

On or about November 10, 1992, plaintiff requested an administrative hearing before the NYDSS to review the NCDSS's denial of her food stamp application. At a hearing in December 1992, plaintiff argued that the NCDSS's use of the fair market value of the Honda (*i.e.,* $7,300) in computing her financial resources was contrary to federal law. She argued that § 2014(g)(5), not § 2014(g)(2), was applicable to determining her eligibility. According to plaintiff, if she "had liquidated her interest in the [Honda], the resource amount of $808.20 would have resulted in her being well below the $2000 resource limit and eligible for food stamps." Plaintiff's Memorandum of Points and Authorities, at 16. By decision dated January 22, 1993, the NYDSS determined that the NCDSS correctly denied plaintiff's application based on the application of § 2014(g)(2) to plaintiff's Honda.

Thereafter, plaintiff commenced this action challenging the denial of her food stamp application.

## II. *DISCUSSION*

It is well settled that a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Paulemon v. Tobin,* 30 F.3d 307, 309 (2d Cir.1994). Moreover, on a motion to dismiss, the allegations in plaintiff's com-

plaint must be accepted as true, *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972) (per curiam), and construed in a light most favorable to plaintiff, *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992).

■ The Secretary argues that the complaint must be dismissed because the USDA's interpretation of § 2014(g)(5)—as embodied in the Interim Directive—is a reasonable interpretation of the Act, thereby deserving judicial deference. When interpreting a statute construed by the agency charged with administering it, a court first looks to whether Congress has spoken to the precise question at issue; if so, both the court and the agency must give effect to that intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Rahim v. McNary,* 24 F.3d 440, 443 (2d Cir.1994); *Skandalis v. Rowe,* 14 F.3d 173, 178–79 (2d Cir.1994). If, on the other hand, the statute is silent or ambiguous as to the precise question at issue, a court does not simply consider how it would interpret the statute, but considers "whether the agency's [interpretation] is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. The court "must defer to the agency's resolution of the matter if it is based on a permissible construction of the statute and is 'sufficiently reasonable.'" *Skandalis,* 14 F.3d at 179; *see Rahim,* 24 F.3d at 443. For the court to sustain the agency's view, the agency's interpretation need not be the only permissible construction that the agency might have adopted, or the interpretation the court would have reached if the question initially had arisen in a judicial proceeding. *Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107–08, 84 L.Ed.2d 90 (1985); *Chevron,* 467 U.S. at 844 & n. 11, 104 S.Ct. at 2782 & n. 11. These principles recognize that an agency charged with administering a statute must be permitted to give reasonable content to any ambiguities in that statute in accommodating conflicting policies committed to its care. *See Department of Treasury, IRS v. FLRA,* 494 U.S. 922, 933, 110 S.Ct. 1623, 1629–30, 108 L.Ed.2d 914 (1990).

■ Under the Secretary's interpretation of § 2014(g)(5), this subsection does not apply to licensed vehicles. Analysis of the Act and its legislative history reveals that Congress did not speak directly to the question of whether § 2014(g)(5) applies to licensed vehicles. Although § 2014(g)(2) directs the Secretary to include in "financial resources" any "licensed vehicle ... used for household transportation or used to obtain or continue employment," § 2014(g)(5) directs that "[a] resource" be identified as an inaccessible resource "if its sale or other disposition is unlikely to produce any significant amount of funds for the support of the household." Because there is an arguable ambiguity as to whether § 2014(g)(5) applies to licensed vehicles, this Court must determine whether the Secretary's construction of the Act is a permissible one and sufficiently reasonable.

The Secretary asserts that the USDA's interpretation of § 2014(g)(5) is consistent with Congress' intended treatment of licensed vehicles under the Act and reflects the USDA's longstanding treatment of licensed vehicles and inaccessible resources under the Act. In 1977, Congress directed that the portion of the fair market value of licensed vehicles used for household transportation or used to obtain or continue employment that exceeds $4,500 be included in the computation of financial resources. *See* Pub.L. No. 95–113, § 1301, 91 Stat. 913, 964 (1977) (codified as amended at 7 U.S.C. § 2014(g)(2)). Then-existing USDA regulations excluded from financial resources one licensed vehicle used for household transportation and all licensed vehicles necessary for employment regardless of fair market value; the equity value of any other vehicle was included in financial resources. H.R.Rep. No. 464, 95th Cong., 1st Sess. 79–80, 88, *reprinted in* 1977 U.S.C.C.A.N. 1704, 2057–58, 2066. Because existing regulations exempted a licensed vehicle used for household transportation regardless of its value, Congress reasoned that "every food stamp household is entitled to own any make, model, and year of car it can afford." *Id.* at 88, *reprinted in* 1977 U.S.C.C.A.N. 2066. Congress explained that under the revised pro-

gram it was not denying a household the right to own and use two cars "[b]ut any car used for general household transportation would have to be included as an asset to the extent that its fair market ... value exceeded $4,500. The same would hold true for cars that are used to seek or continue employment." *Id.* Under the revised program, Congress declared, "[t]he equity [value] of a household in [nonexempt] vehicles would be irrelevant. Only the excessive market value would jeopardize program participation." *Id.* at 88–89, *reprinted in* 1977 U.S.C.C.A.N. 2066–67. In modifying the handling of licensed vehicles, Congress stated:

It is not the Committee's intention in including the partial market value of some automobiles as assets to make many persons ineligible who are otherwise needy virtue [sic] of the income standards of eligibility. But the Committee does not intend either to tolerate abuses of the kind that make the program subject to public criticism. If there is such a thing as a welfare Cadillac, there ought not to be.... However rural an area, a household does not have to have a new or slightly used luxury car to traverse the distances.

Only one type of car could avoid being counted at all—one used to produce earned income during some portion of the year....

Current regulations, which count the equity value of a second car used for some purpose other than employment or production of income, would not be pre-empted by this excessive fair market value provision. All cars would be treated alike by being subject to the $4,500 ceiling over which their value would become a countable asset, except for cars used to produce earned income, which would remain exempt regardless of their fair market value. In addition, any second or third or more cars not necessary for employment would, as under current regulations, have their equity included on the asset total of the household.

*Id.* at 89, *reprinted in* 1977 U.S.C.C.A.N. 2067. This legislative history evidences that Congress considered the fair market value method of accounting for licensed vehicles

used for household transportation or to obtain or continue employment a reasonable means of combatting abuses in the food stamps program and answering public criticism.

Neither the language of § 2014(g)(5) nor its legislative history indicates that Congress intended to alter this treatment for licensed vehicles. The legislative history to § 2014(g)(5) indicates that the purpose of this provision was to remedy the problem of including in resources property that, as a practical matter, cannot be sold. H.R.Rep. No. 569(I), 101st Cong., 2d Sess. 429–30 (1990), 1990 U.S.C.C.A.N. 4656. Congress expressed particular concern with "heir property" and problems faced by food stamp administrators with questions of state property and probate law. *Id.* No mention is made of licensed vehicles. The Secretary asserts that USDA regulations contained an exclusion for "inaccessible resources" well before Congress enacted § 2014(g)(5). *See* 7 C.F.R. § 273.8(e)(8). Under the "inaccessible resources" regulation, the USDA excludes from financial resources

[r]esources having a cash value which is not accessible to the household, such as but not limited to, irrevocable trust funds, security deposits on rental property or utilities, property in probate, and real property which the household is making a good effort to sell at a reasonable price and which has not been sold.

*Id.* Plaintiff does not dispute that the Secretary has never applied this inaccessible resources regulation to licensed vehicles, but has consistently treated licensed vehicles separately. Nothing in the legislative history suggests that in attempting to "[s]implify[ ] resource and eligibility determinations," H.R.Conf.Rep. No. 916, 101st Cong., 2d Sess. 1089, *reprinted in* 1990 U.S.C.C.A.N. 5614, Congress intended to modify the USDA's existing practice of treating licensed vehicles separately from other resources.

Whereas § 2014(g)(5) is general in nature and makes no mention of licensed vehicles, § 2014(g)(2) directs specific treatment for licensed vehicles. While directing the fair market value method of accounting for licensed vehicles, Congress recognized a par-

ticipant's need for transportation to maintain a livelihood or to fulfill certain other needs. For example, § 2014(g)(2) excludes vehicles used to produce earned income or necessary for transportation of a physically disabled household member. Similarly, in 1993 Congress amended § 2014(g)(2) to direct the Secretary to exclude from financial resources the value of a vehicle used to carry fuel for heating or water for home use. Pub.L. No. 103–66, §§ 13924, 13971, 107 Stat. 675, 681 (1993) (effective September 1, 1994). On the other hand, § 2014(g)(2) specifically directs that the Secretary *"shall ... include in financial resources "* any licensed vehicle used for household transportation or used to obtain or continue employment. 7 U.S.C. § 2014(g)(2) (emphasis added). This specific treatment of licensed vehicles in § 2014(g)(2) further suggests that it is reasonable for the Secretary to conclude that Congress did not intend § 2014(g)(5) to apply to licensed vehicles. *See Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 867–68, 6 L.Ed.2d 72 (1961); *Townsend v. Little*, 109 U.S. 504, 512, 3 S.Ct. 357, 362–63, 27 L.Ed. 1012 (1883).[3]

Analysis of the Act and its legislative history demonstrates that the Secretary's interpretation of § 2014(g)(5) is a permissible construction of the Act. That Congress intended a specific method of valuation for licensed vehicles and for treatment of licensed vehicles separately from other resources is a reasonable interpretation of the Act.

■ Plaintiff contends, however, that the Interim Directive should not be accorded judicial deference because it was not issued pursuant to the formal rulemaking provisions of the Administrative Procedure Act, 5 U.S.C. § 553. One district court agreed with plaintiff that the Interim Directive is not entitled to judicial deference. *See Valenzuela v. Espy*, 860 F.Supp. 1421, 1425 (D.Ariz.

1993) (finding that "because the Secretary has not yet issued the required formal regulations that implement the inaccessible resource provisions of 7 U.S.C. § 2014(g)(5), the interim directive is not entitled to judicial deference"). This Court disagrees with *Valenzuela*, as did the district court in *Cook v. Espy*, 856 F.Supp. 1095, 1101 (S.D.W.Va. 1994), which accorded deference to the Interim Directive.

■ An agency's reasonable interpretation of a statute, even though not reduced to a regulation, is entitled to judicial deference. *See FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 439, 106 S.Ct. 1931, 1938–39, 90 L.Ed.2d 428 (1986); *Deel v. Jackson*, 862 F.2d 1079, 1087 (4th Cir.1988), *cert. denied*, 490 U.S. 1092, 109 S.Ct. 2434, 104 L.Ed.2d 991 (1989). In *Philadelphia Gear*, the Supreme Court held that "[a]lthough the FDIC's interpretation of the relevant statute has not been reduced to a specific regulation ...[, it is] entitled in the circumstances of this case to the 'considerable weight [that] should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" *Id.* (quoting *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83); *see, e.g., Deel*, 862 F.2d at 1087 ("Promulgation of a regulation ... is not a prerequisite for according respect to an agency interpretation."); *see also Monongahela Power Co. v. Reilly*, 980 F.2d 272, 279 (4th Cir.1992) (EPA administrator's reasonable interpretation of statute, which was silent on issue presented, was entitled to deference even though position was not result of completed agency rulemaking or fact-finding adjudication and was asserted in litigation against agency). The Interim Directive reflects the Secretary's position based on the agency's expertise within the statute's realm, and represents the Secretary's direction to all state agencies for implementing

---

3. In amending § 2014(g)(2) in 1985, *see* Pub.L. No. 99–198, § 1514, 99 Stat. 1354, 1572 (1985), Congress apparently distinguished between the licensed vehicle and inaccessible resource regulations by providing that the "Secretary shall, in prescribing inclusions in, and exclusions from, financial resources, follow the regulations in force as of June 1, 1982 (other than those relating to licensed vehicles *and inaccessible re-*

*sources* ), and shall, in addition, include in financial resources ... any licensed vehicle ... used for household transportation or used to obtain or continue employment...." (Emphasis added). The 1993 amendment to § 2014(g)(2)'s vehicle limitation, with an automatic inflation adjuster, further indicates Congress' intent to adhere to this "fair market value" treatment for licensed vehicles.

§ 2014(g)(5). Although the Secretary's interpretation of § 2014(g)(5) has not been reduced to a regulation, it is entitled to judicial deference.[4]

Because the Secretary's interpretation of the Act is based on a permissible construction of the statute and is sufficiently reasonable, it is entitled to judicial deference. As plaintiff can prove no set of facts which would support her claim for relief, the Secretary's motion to dismiss is granted, and plaintiff's cross-motion for summary judgment is denied. Because this Court grants the Secretary's motion to dismiss, there are no remaining issues to be decided in this case, and the complaint must also be dismissed as to the New York Commissioner and Nassau County Commissioner.

## III. *CONCLUSION*

For the reasons above, defendants' motions to dismiss are granted, plaintiff's cross-motion for summary judgment is denied; accordingly the complaint is dismissed. The

4. After defendants' filed the present motions, the Secretary published the following revised proposed regulation to implement § 2014(g)(5):

State agencies shall develop clear and uniform standards for identifying kinds of resources that, as a practical matter, the household is unable to sell for any significant return because the household's interest is relatively slight or because the costs of selling the household's interest would be relatively great. A resource shall be so identified if its sale or other disposition is unlikely to produce any significant amount of funds for the support of the household. *This provision does not apply to negotiable financial instruments or vehicles.* The determination of whether any part of the value of a vehicle is included as a resource shall be handled using the provisions of paragraph (h) of this section. The State agency may require verification of the value of a resource to be excluded if the information provided by the household is questionable. The following definitions shall be used in developing these standards:

(i) Significant return shall be any return, after estimated costs of sale or disposition, and taking into account the ownership interest of the household, that is estimated to be one half or more of the applicable resource limit for the household; and

(ii) Any significant amount of funds shall be funds amounting to one half or more of the applicable resource limit for the household.

Clerk of the Court is directed to close the file in this case.

SO ORDERED.

59 Fed.Reg. 52928 (1994) (proposed Oct. 20, 1994) (to be codified at 7 C.F.R. § 273.8(e)(18); emphasis added). In explaining the proposed rule, the Secretary states that the "[USDA] believes that it is very clear from the statutory language and the legislative history of the inaccessible resource provision that it was not the intent of Congress to include vehicles." *Id.* at 52931. The Secretary provides three bases for this determination: (1) the legislative history of § 2014(g)(5) specifically mentions heir property and problems associated with valuing such property as the primary reason for its enactment; (2) vehicles have always been treated differently than all other resources under the Act; and (3) whereas the Congressional Budget Office estimated that there would be no cost involved in implementing the inaccessible resource provision, USDA estimates indicate that the cost of including vehicles under that provision would be over $1 billion over the next five years. *Id.* The Court has already addressed the first and second bases as supporting the Secretary's interpretation of § 2014(g)(5). If the Secretary's assertion of cost is correct, the third basis would provide further support for the Secretary's interpretation of § 2014(g)(5). However, the Court need not consider this basis—which has not been raised by the Secretary or addressed by plaintiff—since it is satisfied that the Secretary's interpretation is a permissible construction of the Act and is sufficiently reasonable.