CREMORE ALEXANDER, Petitioner v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, Respondent

No. 934SC490

(Filed 16 August 1994)

**Social Services and Public Welfare § 20 (NCI4th)— food stamp eligibility—encumbered vehicle—no exclusion from eligibility determination**

Under the Exclusions from Resource Section of the Resource Eligibility Standards Provision of the Food Stamp Act, a vehicle cannot be excluded from an applicant's eligibility determination as an "inaccessible resource" even if the sale of the vehicle would not provide any significant return to the applicant.

**Am Jur 2d, Welfare Laws §§ 26 et seq.**

**Eligibility for food stamps under Food Stamp Act of 1964 (7 USCS §§ 2011 et seq.). 118 ALR Fed. 473.**

Appeal by petitioner from order entered 8 March 1993 by Judge James D. Llewellyn in Onslow County Superior Court. Heard in the Court of Appeals 8 February 1994.

## ALEXANDER v. N.C. DEPARTMENT OF HUMAN RESOURCES

### [116 N.C. App. 15 (1994)]

Petitioner, Cremore Alexander, filed an application for Food Stamps with the Onslow County Department of Social Services in July 1992. At the time of the application, petitioner and his wife owned a 1991 GMC Jimmy ("the vehicle"), which was financed, with a balance of $11,236.22 owed. The vehicle's tax value was $10,370.00. The Department of Social Services denied petitioner's application because petitioner's reserve assets exceeded the allowable limit. Petitioner made a timely request for a State Appeal Hearing, which was held on 2 October 1992. The evidence at the hearing showed that the value of petitioner's vehicle was the only impediment to petitioner's food stamp eligibility. Ms. Terri Alexander, petitioner's wife, testified that the vehicle had been purchased in February 1992, when petitioner had been working. The amount originally borrowed was approximately $12,431.00, with payments beginning in March 1992. Petitioner was laid off in June of 1992. He used the vehicle to look for work and his wife used the vehicle to attend school.

The Hearing Officer calculated the reserve value of petitioner's vehicle as being $5,870.00 by subtracting the statutory vehicle allowance amount, $4,500.00, from the tax value of petitioner's vehicle, $10,370.00. In addition, the officer found that petitioner's household was subject to a $2,000.00 reserve limit. Thus, the hearing officer concluded that the reserve value of the vehicle exceeded the household's reserve limit and that the excess reserve in the vehicle rendered petitioner ineligible for benefits. The hearing officer affirmed the decision of the Onslow County Department of Social Services denying petitioner's food stamp application. This denial became respondent's Final Agency Decision on 5 November 1992.

Petitioner timely filed a Petition for Judicial Review. The superior court entered an order affirming the decision of respondent. Petitioner appealed.

*Legal Services of the Lower Cape Fear, by Mason Hogan, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Claud R. Whitener, III, for respondent-appellee.*

*Assistant U.S. Attorney R.A. Renfer, Jr., and Patricia Arzuaga, amicus curiae.*

MARTIN, Judge.

Because the hearing officer determined that petitioner's vehicle was the only impediment to petitioner's food stamp eligibility, the single issue presented by this appeal is whether, under the Exclusions from Resource Section of the Resource Eligibility Standards Provision of the Food Stamp Act, a vehicle can be excluded from an applicant's eligibility determination as an "inaccessible resource" if the sale of the vehicle would not provide any significant return to the applicant. Petitioner contends that his vehicle can be excluded from his resource eligibility calculation as an inaccessible resource. The recently amended inaccessible resource provision of the Food Stamp Act effects an exclusion for certain resources which would not provide an applicant with food if sold. Petitioner asserts that the inaccessible resource provision, which is found in the resource eligibility section of the Act, requires respondent to exclude petitioner's vehicle from petitioner's eligibility determination as an inaccessible resource.

Respondent counters that both the plain language of the Food Stamp Act and the legislative history of the Act clearly demonstrate Congressional intent to count vehicles as resources, regardless of a food stamp applicant's equity in the vehicle, and to not exclude a vehicle as an inaccessible resource. Additionally, respondent contends that the Secretary of Agriculture, who is charged with administering the Food Stamp Act, has interpreted the "inaccessible resource" provision of the Act as providing that a vehicle cannot be an inaccessible resource under the Act, and that, according to Federal law, the Secretary's decision is entitled to deference by the courts.

Our review of this case is limited to the question of whether the trial court committed any errors of law. *Tay v. Flaherty*, 90 N.C. App. 346, 348, 368 S.E.2d 403, 404 (1988). In *Tay*, this Court stated:

> [w]hen an appellate court is reviewing the decision of another court—as opposed to the decision of an administrative agency— the scope of review to be applied by the appellate court under G.S. § 150A-52 is the same as it is for other civil cases. That is, we must determine whether the trial court committed any errors of law. See N.C. Gen. Stat. 7A-27(b) (1981) and Rule 10(a) of the North Carolina Rules of Appellate Procedure.

*See Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 443 S.E.2d 114 (1994). In reviewing the actions of the respondent, the trial court held as a matter of law that the decision of the hearing offi-

cer to deny petitioner's food stamp benefits was supported by substantial competent evidence of record and the appropriate State and Federal statutes and regulations. Therefore, our review is limited to the question of whether the trial court's finding that the inaccessible resource provision does not require respondent to exclude petitioner's vehicle from petitioner's resource eligibility determination is correct under Federal law.

Only two provisions of the Act are at issue: 7 U.S.C. § 2014(g)(2), governing the treatment of licensed vehicles, and 7 U.S.C. § 2014(g)(5), governing the treatment of inaccessible resources. Both provisions are part of the "exclusions from resources" section of the Act. 7 U.S.C. § 2014(g)(2) states:

> The Secretary shall, in prescribing inclusions in, and exclusions from, financial resources, . . . include in financial resources . . . any licensed vehicle (other than one used to produce income or that is necessary for transportation of a physically disabled household member . . . ) used for household transportation or used to obtain or continue employment to the extent that the fair market value of any such vehicle exceeds $4,500 . . . .

In essence, this provision exempts up to $4,500 of the value of a licensed vehicle, other than those vehicles necessary to produce income or necessary to transport a disabled household member, from the computation of an applicant's financial resources to determine eligibility under the Act. The regulation governing the licensed vehicles provision summarizes the treatment of each licensed vehicle under the Act as follows:

> First, it will be evaluated to determine if it is exempt as an income producer or as a home. If not exempt, it will be evaluated to determine if its fair market value exceeds $4,500. If worth more than $4,500, the portion in excess of $4,500 for each vehicle will be counted as a resource. The vehicle will also be evaluated to see if it is equity exempt as the household's only vehicle or necessary for employment reasons. If not equity exempt, the equity value will be counted as a resource. If the vehicle has a countable market value of more than $4,500 and also a countable equity value, only the greater of the two amounts shall be counted as a resource.

7 C.F.R. 273.8(h)(6). The regulation explicitly provides that any amount of value in a vehicle in excess of $4,500 is included in an

applicant's resource level when determining eligibility under the Food Stamp Act. Furthermore, an applicant's equity in a vehicle is only considered when evaluating a second vehicle.

The "Inaccessible Resource" provision, as amended by Congress in 1990 and 1991, sets out an exemption for resources which a household would not be able to sell for any significant return. The 1990 amendments to 7 U.S.C. § 2014(g)(5) state that:

> The Secretary shall promulgate rules by which State agencies shall develop standards for identifying kinds of resources that, as a practical matter, the household is unlikely to be able to sell for any significant return because the household's interest is relatively slight or because the cost of selling the household's interest would be relatively great. Resources so identified shall be excluded as inaccessible resources.

The 1991 amendments to this provision added the following:

> A resource shall be so identified if its sale or other disposition is unlikely to produce any significant amount of funds for the support of the household. The Secretary shall not require the State agency to require verification of the value of a resource to be excluded under this paragraph unless the State agency determines that the information provided by the household is questionable.

These two amendments became effective 1 February 1992. The Secretary has not yet issued final regulations to guide the state agencies in determining what types of resources may be excluded from an eligibility determination. The former regulation governing inaccessible resources, which is still in force, lists several types of resources that may be excluded as inaccessible. The regulation states:

> Resources having a cash value which is not accessible to the household, **such as but not limited to**, irrevocable trusts, security deposits on rental property or utilities, property in probate, and real property which the household is making a good faith effort to sell at a reasonable price and which has not been sold . . . .

7 C.F.R. § 273.8(e)(8). (Emphasis added.)

Based on the statutory provision and regulations governing licensed vehicles, the hearing officer found that the reserve value of

ALEXANDER v. N.C. DEPARTMENT OF HUMAN RESOURCES

[116 N.C. App. 15 (1994)]

petitioner's vehicle was $5,870.00, since the vehicle's $10,370.00 tax value exceeded the $4,500.00 exemption amount by that amount. Petitioner does not quarrel with the calculations, rather, he maintains that, because he has no equity in his vehicle, his vehicle qualifies as an inaccessible resource since the sale or disposition of the vehicle would not provide any significant amount of funds for support of the household. Therefore, petitioner argues that his vehicle should be excluded from his eligibility determination.

7 U.S.C. § 2014(g)(2) mandates that petitioner's vehicle be valued at fair market value; however, 7 U.S.C. § 2014(g)(5) mandates that any resource which is unlikely to provide any significant return upon its sale or disposition shall not be counted as a resource. Nowhere does the Act state that the inaccessible resource provision shall not apply to licensed vehicles; nor does the Act provide for the converse situation, that a vehicle can be excluded from an eligibility determination under the inaccessible resource provision. Thus, we must determine how these separate provisions interact. In so doing, we must look to the legislative history of the Act for guidance as to the scope Congress intended for the inaccessible resource provision.

Respondent contends that the legislative history clearly demonstrates that Congress did not intend to exclude heavily encumbered vehicles from the determination of a household's resources under the inaccessible resource provision. As evidence of this intent, respondent traces changes in the Act concerning the valuation of licensed vehicles. Prior to the passage of the Food Stamp Act of 1977, the Secretary, by regulation, had been exempting entirely from such determination one licensed vehicle used for household transportation as well as all vehicles necessary for employment. *H.R. Rep. 464, 95th Congress., 1st Sess.* 78-80, 88; 1977 U.S.C.A.A.N. 2056-58, 2066. However, in 1977 Congress changed the treatment of vehicles under the Act to require the valuation of vehicles at their fair market value and to exclude only a select group of vehicles such as vehicles used to produce income. During this same period, the regulations changed to explicitly state that encumbrances are not to be considered when determining whether a vehicle exceeds the $4,500 exemption. 43 Fed. Reg. 18884-85 (5/2/75); 43 Fed. Reg. 47862-64, 47902 (10/17/78); see also current 7 C.F.R. 273.8(h)(3), (4), and (5). In our view, the legislative history concerning licensed vehicles clearly indicates that a licensed vehicle is valued at its fair market value for a resource determination under the Food Stamp Act.

Moreover, on 20 December 1993, the United States Department of Agriculture announced its intention to conduct a demonstration project under the authority of § 17(h) of the Food Stamp Act as mandated by Congress. The purpose of this demonstration project, titled The Food Stamp Program's Vehicle Exclusion Limit Demonstration (VELD), is to:

> evaluate the effects, in both rural and urban areas, of including in financial resources under section 5(g) of the Act the fair market value of licensed vehicles to the extent the value of each vehicle exceeds the statutory base figure ($4,500 until August 31, 1994), but excluding value of (1) any licensed vehicle that is used to produce earned income, necessary for transportation of an elderly or physically disabled household member, or used as the household's home; and (2) any licensed vehicle used to obtain, continue, or seek employment (including travel to and from work); used to pursue employment-related education or training; or used to secure food or the benefits of the food stamp program.

Administrative Notice Vol. 58-242 (Monday, Dec. 20, 1993). In essence, this provision's purpose is to determine the effect of adding to the category of exempted vehicles any licensed vehicle which a household uses to find work, to travel to and from work, to pursue education or training for employment purposes or to secure food or the benefits of the food stamp program. In the Administrative Notice creating this demonstration program, the Department of Agriculture stated:

> Concern is escalating that many otherwise eligible households with low-incomes are being denied food stamp benefits because they own vehicles with too high a fair market value or equity value notwithstanding the fact that such vehicles are used for essential transportation between home, work, shopping and medical services. Unemployed households may also face a difficult decision between having a vehicle to look for work or selling the vehicle in order to qualify for food stamps. Congress has mandated these demonstration projects to enable a careful examination of the impact of liberalizing application of the resource test to vehicles.

*Id.* This Congressionally mandated project demonstrates Congressional understanding of the dilemma facing someone like petitioner who is forced to maintain a vehicle in order to look for work or to sell the vehicle to qualify for food stamp benefits. However, until Con-

gress sees fit to change the statutory and regulatory provisions covering licensed vehicles, the treatment of licensed vehicles will still require counting towards an applicant's financial resources the value of applicant's vehicle which exceeds the statutory vehicle exemption level. Thus, the entire legislative history of the licensed vehicle provision unquestionably demonstrates that the value of a licensed vehicle above $4,500 is counted in an applicant's resource determination.

Acknowledging the legislative history of the licensed vehicle provisions reflect the intent of Congress to exclude encumbrances when determining eligibility under the Act, petitioner argues that the legislative history of the inaccessible resource provision effectuates a new exemption for a licensed vehicle if the sale or disposition of such vehicle is unlikely to provide funds for the support of the household. Petitioner's argument is not without merit.

Support for petitioner's position is found in congressional hearings which concerned the amendments to the inaccessible resource provision. In the hearings, Sen. Patrick Leahy, Chairman of the Senate Agriculture Committee stated:

> The program's resource rules are intended to deny eligibility to persons with other, readily available means of obtaining food. It serves no purpose to deny a household food stamps because of an asset whose disposition would be costly relative to its value and therefore would not yield the household any significant cash.

137 Cong.Rec. S16673. The House Report, while illustrating this provision with the example of heir property, expounded on the purpose behind the resource provision by stating:

> The purpose of the program's resource rules is to limit food stamps to those who really need them. They insure that the Federal Government does not provide assistance to households with substantial resources. This purpose is obviously not served when the resources cannot be sold.

H.Rep. No. 569 (Part 1), 101st Cong., 2d Sess., 429-430 (July 3, 1990). Because petitioner has no equity in his vehicle, selling the vehicle would not provide resources which petitioner's family could use to buy food. Consequently, petitioner asserts that excluding petitioner's vehicle as an inaccessible resource does not offend the purpose of the Act's resource rules.

Respondent contends, however, that the legislative history of the inaccessible resources provision demonstrates that Congress intended to limit application of the provision to resources, like heir property, which are not readily liquidated. According to its argument, the 1990 and 1991 amendments to the inaccessible resource provision were simply paperwork saving devices.

In *Jackson v. Jackson*, 857 F.2d 951 (4th Cir. 1988), the Fourth Circuit classified three types of resources that qualify as inaccessible resources. The classifications include resources which have a substantial or legal impediment preventing sale, resources which cannot be sold as a practical matter, and resources which should not be sold because of policy considerations. Respondent argues that petitioner's vehicle does not meet any of these classifications. However, it would certainly be impractical for petitioner to sell his vehicle since he owes more money than it is worth. Furthermore, the outstanding loan on the car, in effect, works to prevent a sale since petitioner cannot afford to pay the amount of the loan above the current value of the vehicle. Moreover, *Jackson* was decided prior to the 1990 and 1991 amendments to the inaccessible resource provision. Consequently, we find nothing in the legislative history of the inaccessible resource provision to keep petitioner's vehicle from being excluded from petitioner's resource determination as an inaccessible resource.

Since the legislative histories of the two provisions do not provide an answer as to the scope of the inaccessible resource provision, we must turn to the Secretary of Agriculture's interpretation. Administrative Notice A-24-92, dated 3 February 1992, states, in pertinent part: "**We have received inquiries asking if the general provisions of Section (g)(5) of the Food Stamp Act (FSA) are applicable to vehicles. The answer is no.**" Thus, the Secretary's interpretation supports respondent's contention that a licensed vehicle may not be excluded from an applicant's resource eligibility calculation as an accessible resource.

Petitioner challenges the validity of Administrative Notice A-24-92, and therefore our consideration of it, on the grounds that it has not been promulgated in accordance with the notice and comment procedures of the Administrative Procedure Act, ("APA"). However, the notice and comment procedures are only applicable to legislative rules; not interpretative rules. 5 U.S.C. § 553(b)(A) (Unless a statute provides otherwise, the notice and comment requirements do not apply to interpretative rules.) An agency statement is an inter-

pretative rule if it "effectuates no change in policy or merely explains or clarifies law or regulations." *Allen v. Bergland*, 661 F.2d 1001, 1007 (4th Cir. 1981), *quoting Gosman v. United States*, 573 F.2d 31, 39 (U.S. Court of Claims 1978). Administrative Notice A-24-92 relies on the explicit provision of 7 U.S.C. § 2014(g)(2) concerning licensed vehicles in its ruling that licensed vehicles are not to be excluded an eligibility determination as inaccessible resources. Therefore, Administrative Notice A-24-92 is simply an interpretive rule, not subject to APA's notice and comment procedures, because it clarifies the law and regulations concerning licensed vehicles and because it effectuates no change in the treatment of licensed vehicles.

The Food Stamp Act expressly charges the United States Secretary of Agriculture with implementation and administration of the Food Stamp program. 7 U.S.C. § 2014(b). The United States Supreme Court has recognized:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43, 81 L.E.2d 694, 702-03 (1984). Since, we have already determined that Congress has not spoken to the precise issue of whether or not a licensed vehicle can ever qualify as an inaccessible resource under the Act, this Court must determine whether the agency's interpretation is based on a permissible construction of the statute.

In *Chevron*, the court enunciated the principle that an agency's interpretation concerning the statute it is charged with administering is entitled to deference by reviewing courts. The court stated:

> considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to

administer, and the principle of deference to administrative interpretations "has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations."

*Id.* at 844, 81 L.E.2d at 704. (Citations omitted.) Thus, the Secretary's interpretation of the Food Stamp Act and the accompanying regulations must be accorded great deference as long as the Secretary's interpretation is based on a permissible construction of the statute.

To sustain the Secretary's interpretation, we do not have to find that the Secretary's construction is the only reasonable construction, nor do we have to find that it is the construction which this Court would have reached had the question arisen first in judicial proceedings. *Udall v. Tallman*, 380 U.S. 1, 16, 13 L.Ed.2d 616, 625 (1965). Instead, this Court need only find that the agency's interpretation is a reasonable interpretation of the statute. *See Com. of Mass. v. Lyng*, 893 F.2d 424 (1st Cir. 1990); *State of N.Y. v. Lyng*, 829 F.2d 346 (2nd. Cir. 1987); *Biggs v. Lyng*, 823 F.2d 15 (2nd. Cir. 1987) (upholding Secretary's interpretation of income as reasonable).

The Secretary's interpretation that a licensed vehicle cannot be excluded as an inaccessible resource is a reasonable and permissible interpretation of the statute, and is grounded upon Congress' explicit treatment of licensed vehicles under the Act. Therefore, we accord it the deference to which it is entitled and affirm the trial court's order which found that the Hearing Officer's decision to deny petitioner food stamps based on petitioner's excess resources is supported by the appropriate State and Federal statutes and regulations and that the inaccessible resource provision does not require respondent to exclude petitioner's vehicle from petitioner's resource eligibility determination is correct under Federal law.

Affirmed.

Chief Judge ARNOLD and Judge WYNN concur.