**Jeffrey D. BECKMAN, Plaintiff,**

v.

**Richard ROMINGER, as Acting Secretary of the United States Department of Agriculture, Charles Palmer, as Director of the Iowa Department of Human Services, Defendants.**

No. C94–0233.

United States District Court, N.D. Iowa, Cedar Rapids Division.

June 28, 1995.

Martin Ozga of Legal Services Corp. of Iowa, Des Moines, IA, Jeffrey L. Harris of Legal Services Corp. of Iowa, Cedar Rapids, IA, for plaintiff.

Barbara E.B. Galloway, Asst. Atty. Gen., Des Moines, IA, and Larrence Kudej, Asst. U.S. Atty., Cedar Rapids, IA, and Martha E. Rubio and Thomas W. Millet, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, for defendants.

## *ORDER*

JARVEY, Chief United States Magistrate Judge.

This matter comes before the court pursuant to defendants' February 15, 1995 motion to dismiss (docket number 11). Plaintiff filed a resistance to the motion on March 8, 1995. On March 21, 1995, the parties consented to proceed before the undersigned United States Magistrate Judge for any and all proceedings in this case pursuant to 28 U.S.C. § 636(c). The motion is granted.

## *I. BACKGROUND*

Plaintiff Jeffrey D. Beckman filed an application for food stamps on March 25, 1994 under the Food Stamp Act ("Act"), 7 U.S.C. § 2011 et seq. At that time, plaintiff owned a 1993 Nissan Sentra with a fair market value of $8,450.00. As of April 26, 1994, plaintiff owed approximately $7,818.30 on the car. Pursuant to 7 U.S.C. § 2014(g)(2) and 7

C.F.R. § 273.8(h) of the Food Stamp Act, the Iowa Department of Human Services (IDHS)[1] counted the fair market value of plaintiff's automobile in excess of $4,500 (equaling $3,950) as a household financial resource. Because that amount exceeded the $2,000 limit[2] on allowable financial resources, plaintiff's application was denied by IDHS on April 6, 1994.

Plaintiff appealed that determination and a hearing was held before an Administrative Law Judge (ALJ) on May 26, 1994. At the hearing, plaintiff argued that IDHS's use of the fair market value of his automobile as part of his allowable household financial resources was contrary to the provisions of § 2014(g). Specifically, plaintiff argued that the fair market value of his automobile should have been excluded entirely as an "inaccessible resource" under § 2014(g)(5) because he only has a small equity interest in the vehicle. On June 27, 1994, the ALJ issued a proposed decision rejecting plaintiff's argument and affirming the denial of plaintiff's application for food stamps. Finally, on August 17, 1994, the director of IDHS, Charles Palmer, adopted the ALJ's proposed decision as the final decision of the IDHS. Plaintiff then filed the instant complaint seeking declaratory and injunctive relief asserting that the defendants violated the provisions of 7 U.S.C. § 2014(g)(5) by failing to consider his automobile as an "inaccessible resource."

Defendants argue that the plain language and legislative history of 7 U.S.C. § 2014(g) show that the "inaccessible resource" provision does not apply to licensed automobiles such as the plaintiff's Nissan Sentra. Defendants further argue that even if the plain language does not mandate that nonexempt licensed vehicles be included in the plaintiff's household financial resources, the Secretary's interpretation of § 2014(g) is reasonable and therefore is entitled to substantial deference. Plaintiff asserts that the Secretary's interpretation of § 2014(g)(5) regarding the application and scope of the "inaccessible resource rule", as set forth in Administrative Notice A–24–92, is void as violative of the rulemaking provisions of the Administrative Procedures Act, 5 U.S.C. § 553, because it was issued without the requisite notice and comment period. Therefore, plaintiff asserts that the Secretary's "interpretation" of § 2014(g)(5) is not entitled to judicial deference.

## II. CONCLUSIONS OF LAW

### 1. Motion to Dismiss

■ Defendants seek dismissal of the plaintiff's complaint pursuant to *Fed.R.Civ.P.* 12(b)(6) for failure to state a claim upon which relief may be granted. In considering a motion to dismiss under *Rule* 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under *Rule* 12(b)(6) is warranted. *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982). Nevertheless, such motions "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir.1968), *cert.*

---

**1.** Although the Food Stamp Act is a federally funded program within the United States Department of Agriculture (USDA), 7 U.S.C. § 2020 of the Food Stamp Act delegates administration of the program to individual state agencies. Accordingly, the Iowa Department of Human Services is required to administer the program and make individual eligibility determinations in conformance with the Secretary of Agriculture's ("Secretary") standards of eligibility. *See* 7 U.S.C. § 2014(b).

**2.** Section 2014(g)(1) sets forth the applicable amount of allowable household financial resources as follows:

> a household otherwise eligible to participate in the food stamp program will not be eligible to participate if its resources exceed $2,000, or, in the case of a household which consists of or includes a member who is 60 years of age or older, if its resources exceed $3,000.

7 U.S.C. § 2014(g)(1).

*denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969).

### 2. Current Statutory Framework

The sole issue in this case involves the interrelationship of two specific provisions of the Food Stamp Act governing household financial resources: 7 U.S.C. § 2014(g)(2) and 7 U.S.C. § 2014(g)(5).[3] Section 2014(g)(2) specifically addresses the treatment of licensed vehicles as part of a household's financial resources and provides that:

> The Secretary shall, in prescribing inclusions in, and exclusions from, financial resources, ... include in financial resources ... any licensed vehicle (other than one used to produce earned income or that is necessary for transportation of a physically disabled household member ...) used for household transportation or used to obtain or continue employment to the extent that the fair market value of any such vehicle exceeds a level set by the Secretary, which shall be $4,500 through August 31, 1994, ...

7 U.S.C. § 2014(g)(2). Thus, under § 2014(g)(2), a household must include the fair market value of any nonexempt vehicle in excess of $4,500 as an available financial resource when determining eligibility under the Act. *See* 7 C.F.R. § 273.8(h)(6).

However, in 1990, Congress enacted the "inaccessible resource" provision of 7 U.S.C. § 2014(g)(5) to exempt from inclusion in an applicant's financial resources any resource that the household would be unable to sell for any significant return. Specifically, 7 U.S.C. § 2014(g)(5), as amended in 1991, provides that:

> The Secretary shall promulgate rules by which State agencies shall develop standards for identifying kinds of resources that, as a practical matter, the household is

unlikely to be able to sell for any significant return because the household's interest is relatively slight or because the cost of selling the household's interest would be relatively great. Resources so identified shall be excluded as inaccessible resources. A resource shall be so identified if its sale or other disposition is unlikely to produce any significant amount of funds for the support of the household. ...

7 U.S.C. § 2014(g)(5).

In the present case, plaintiff argues that because he only has a small equity value in his automobile, his automobile should be considered an "inaccessible resource" under § 2104(g)(5) since "its sale or other disposition is unlikely to produce any significant amount of funds for the support of the household." Defendants assert that § 2014(g)(2) specifically governs the evaluation of licensed vehicles as a household resource and that the general "inaccessible resource" provision was not intended to apply to licensed vehicles.

### 3. Judicial Review of Administrative Agency's Statutory Interpretation

The Supreme Court has set forth a two-step procedure for analyzing an administrative agency's statutory construction and interpretation. In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court stated that:

> [w]hen a court reviews an agency's construction of a statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has spoken directly to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed in-

---

**3.** This specific issue of the relationship between § 2014(g)(2) and (g)(5) has been addressed by several other courts. The majority of courts have accepted the Secretary's interpretation that licensed vehicles are not subject to exclusion from household financial resources as "inaccessible resources." *See Wasserman v. Glickman,* 882 F.Supp. 288 (E.D.N.Y.1995); *Bizzell v. Espy,* No. LR–C–94–267 (E.D.Ark. Mar. 29, 1995); *Warren v. North Carolina Department of Human Resources,* No. 1:94cv33 (W.D.N.C. Aug. 29, 1994);

*Butler v. Miller,* No. 93–40187 (E.D.Mich. July 15, 1994); *Cook v. Espy,* 856 F.Supp. 1095 (S.D.W.Va.1994); *Alexander v. North Carolina Department of Human Resources,* 116 N.C.App. 15, 446 S.E.2d 847 (1994). However, the district courts in *Alexander v. Espy,* No. CV–N–93–832–DWH (D.Nev. Feb. 21, 1995) and *Valenzuela v. Espy,* 860 F.Supp. 1421 (D.Ariz.1993) rejected the Secretary's interpretation and found in favor of the applicant.

tent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (citations omitted).

### A. Express Congressional Intent to Apply § 2014(g)(5) to Licensed Vehicles

■ As required by the two-step analysis in *Chevron,* the court must first determine whether Congress explicitly intended the "inaccessible resource" provision in § 2014(g)(5) to apply to licensed vehicles not excluded from household resources under § 2014(g)(2). Nowhere in the provisions of the Food Stamp Act or its legislative history has Congress directly addressed the precise issue of whether § 2014(g)(5) applies to licensed vehicles. Indeed, other courts addressing the issue have similarly been unable to discern an express Congressional intent from the statute itself or its legislative history. *See e.g., Alexander v. North Carolina Department of Human Resources,* 116 N.C.App. 15, 446 S.E.2d 847, 851 (1994) ("Nowhere does the Act state that the inaccessible resource provision shall not apply to licensed vehicles; nor does the Act provide for the converse situation, that a vehicle can be excluded from an eligibility determination under the inaccessible resource provision."); *Wasserman v. Glickman,* 882 F.Supp. 288, 290 (E.D.N.Y. 1995) ("Analysis of the Act and its legislative history reveals that Congress did not speak directly to the question of whether § 2014(g)(5) applies to licensed vehicles."); *Warren v. North Carolina Department of Human Resources,* No. 94cv33, p. 7–8 (W.D.N.C. Aug. 29, 1994) ("On the issue of proper valuation of heavily indebted motor vehicles, the Act itself is cryptic.... It is not clear ... whether Congress meant for the 1990 amendment adding Section

2104(g)(5) to limit the fair market valuation system for vehicles to those vehicles in which a household has an equity interest."); *Alexander v. Espy,* No. CV–N–93–832–DWH, p. 6 (D.Nev. Feb. 21, 1995) ("[T]he court finds the legislative history of § 2014(g) and its subsections of little assistance in determining the intended interplay between 7 U.S.C. § 2014(g)(2) and 7 U.S.C. § 2014(g)(5)."). Accordingly, the court finds that Congress has not directly addressed the specific question of the relationship of § 2104(g)(2) and (g)(5). Therefore, the court must proceed to the second part of the *Chevron* analysis and determine whether the Secretary's interpretation of the Act is a reasonable and permissible construction of the statute. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781.

### B. The Secretary's Interpretation of § 2014(g)

The Secretary issued its interpretation of § 2014(g)(5) through an "Administrative Notice" to the regional offices of the Food and Nutrition Service which stated, in pertinent part:

We have received inquiries asking if the general provisions of Section (g)(5) of the Food Stamp Act (FSA) are applicable to vehicles. The answer is no. Section [2014](g)(2) of the Food Stamp Act specifically governs the vehicle exclusion policy.

The Secretary asserts that its interpretation of the relationship between § 2014(g)(5) and § 2014(g)(2) is fully consistent with Congress' intended treatment of licensed vehicles and inaccessible resources under the Food Stamp Act. Thus, the court must look to the legislative history of the Act to determine if the Secretary's interpretation is a reasonable and permissible interpretation of the Act.

In 1977, Congress began considering a portion of the fair market value of licensed vehicles as a household financial resource. Congress enacted the fair market value provision directing that the fair market value of licensed vehicles used for household transportation or to obtain or continue employment in excess of $4,500 be included in an applicant's household financial resources. *See* Pub.L. No. 95–113, 91 Stat. 913, 964

(1977) (codified as amended at 7 U.S.C. § 2014(g)(2)). Prior to that time, USDA regulations had allowed an applicant to exclude one licensed vehicle used for household purposes and all vehicles used for employment *regardless of fair market value. See* H.R.Rep. No. 464, 95th Cong., 1st Sess. 79–80, 88, *reprinted in* 1977 U.S.C.C.A.N. 2057–58, 2066. The equity value of any other vehicles was then included in the household financial resources. *Id.*

The intent behind Congress' decision to begin considering the fair market value of licensed vehicles is clear. Congress believed that the 1977 revisions would help alleviate certain abuses that had occurred in the food stamp program. At that time, Congress expressed its rationale for the change in the valuation of licensed vehicles stating:

> It is not the Committee's intention in including the partial market value of some automobiles as assets to make many persons ineligible who are otherwise needy [by] virtue of the income standards of eligibility. But the committee does not intend to tolerate abuses of the kind that make the program subject to public criticism. If there is such a thing as a welfare Cadillac, there ought not to be.... However rural an area, a household does not have to have a new or slightly used luxury car to traverse the distances.

*Id.* at 89, *reprinted in* 1977 U.S.C.C.A.N. 2067. Thus, Congress noted that under the revised program, "[t]he equity of a household in such [nonexempt] vehicles would be irrelevant. Only excessive market value would jeopardize program participation." *Id.* at 88–89, *reprinted in* 1977 U.S.C.C.A.N. 2066–67. Clearly, the legislative history of § 2014(g)(2) evidences a Congressional intent to utilize the fair market value method for valuing licensed vehicles.[4]

The court also finds that a review of § 2014(g)(5) and its legislative history reveals no intent of Congress to depart from using the fair market value method for valuing licensed vehicles. There is no mention of licensed vehicles in the statutory wording of § 2014(g)(5) or its legislative history. Congress' main concern in enacting § 2014(g)(5) was to "[s]implify[ ] resource and eligibility determinations" by eliminating the need for state agencies to perform complex asset valuations in determining whether an asset qualified as an "inaccessible resource."[5] H.R.Conf.Rep. No. 916, 101st Cong., 2d Sess. 1089, *reprinted in* 1990 U.S.C.C.A.N. 5614.

The court also finds significant that in August 1993, Congress amended § 2014(g)(2) to increase the $4,500 vehicle limitation to $5,000 by October 1, 1996 after which the vehicle limitation will be annually adjusted for inflation. When considering the amendment to § 2014(g)(2) to increase the vehicle limitation, Congress was certainly aware of the "inaccessible resource" provision which

---

4. USDA regulations also support a finding that after 1977, Congress has intended to disregard encumbrances on vehicles and consider only the fair market value in valuing licensed vehicles. Specifically, USDA regulations provided a summary as to how each license vehicle is to be handled:

> First, it will be evaluated to determine if it is exempt as an income producer or as a home. If not exempt, it will be evaluated to determine if its fair market value exceeds $4,500. If worth more than $4,500, the portion in excess of $4,500 for each vehicle will be counted as a resource. The vehicle will also be evaluated to see if it is equity exempt as the household's only vehicle or necessary for employment reasons. If not equity exempt, the equity value will be counted as a resource. If the vehicle has a countable market value of more than $4,500 and also a countable equity value, only the greater of the two amounts shall be counted as a resource.

7 C.F.R. § 273.8(h)(6). Thus, the regulation explicitly requires that the fair market value of any nonexempt vehicle over $4,500 be included as a household financial resource. *See also* 7 C.F.R. § 273.8(h)(3). Further, the equity in a vehicle is only considered when evaluating a second vehicle. *See* 7 C.F.R. § 273.8(h)(4)(ii).

5. Prior to enactment of § 2014(g)(5), USDA regulations provided for exclusion of certain "inaccessible resources" from household financial resources. Those regulations provided examples of the types of resources the Secretary would possibly exclude from a household's financial resources as an "inaccessible resource":

> Resources having a cash value which is not accessible to the household, such as but not limited to, irrevocable trust funds, security deposits on rental property or utilities, property in probate, and real property which the household is making a good effort to sell at a reasonable price and which has not been sold.

7 C.F.R. § 273.8(e)(8).

had been enacted in 1990 and amended in 1991. Had Congress intended for licensed vehicles to be considered "inaccessible resources" under § 2014(g)(5), the court doubts that Congress would have decided to increase the vehicle limitation of § 2014(g)(2). *See Warren,* No. 1:94cv33, at 11 ("[T]he fact that Congress acted in August 1993 to increase the § 2014(g)(2) vehicle limitation and provide for automatic inflation-indexed increases in the future suggests that Congress has no intention of departing from the fair-market-value method of valuing motor vehicles.").

Upon review of the Act and its legislative history, the court believes that the Secretary's interpretation of § 2014(g)(2) and (g)(5) is a permissible construction of the Act. "That Congress intended a specific method of valuation for licensed vehicles and for treatment of licensed vehicles separately from other resources is a reasonable interpretation of the Act." *Wasserman,* 882 F.Supp. at 294.

### 4. Judicial Deference to Secretary's Interpretation

Plaintiff argues that the Secretary's interpretation of the interplay between § 2104(g)(2) and (g)(5) as set forth in the "Administrative Notice" is not entitled to judicial deference because it was issued without the requisite notice and comment period in violation of the rulemaking provisions of the Administrative Procedures Act, 5 U.S.C. § 553. The Secretary asserts that no notice or comment period was necessary because the Administrative Notice was merely interpretive rather than a substantive or legislative rule.

The Eighth Circuit Court of Appeals has stated that:

> courts are in general agreement that *interpretive rules simply state what the administrative agency thinks the statute means,* and only "remind" affected parties of existing duties. In contrast, a substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties.

*Northwest National Bank v. United States Department of Treasury,* 917 F.2d 1111, 1117 (8th Cir.1990) (emphasis added) (quoting *Jerri's Ceramic Arts, Inc. v. Consumer Product Safety Commission,* 874 F.2d 205, 207 (4th Cir.1989)). "An agency statement is an interpretive rule if it 'effectuates no change in policy or merely explains or clarifies law or regulations.' " *Alexander,* 446 S.E.2d at 853 (quoting *Allen v. Bergland,* 661 F.2d 1001, 1007 (4th Cir.1981)).

This precise issue has similarly been addressed by several of the other courts analyzing the interplay between § 2014(g)(2) and (g)(5). In *Alexander,* 446 S.E.2d at 853, the court stated that "Administrative Notice A–24–92 is simply an interpretive rule, not subject to APA's notice and comment procedures, because it clarifies the law and regulations concerning licensed vehicles and because it effectuates no change in the treatment of licensed vehicles." Similarly, in *Rainwater v. Idaho Department of Health and Welfare,* No. CIV 94–196–N–ELJ (D.Idaho Dec. 7, 1994) (Magistrate's Report and Recommendation) the court stated "it is clear that the Secretary's notice is instructional, reflecting his thinking in the particular, narrowly defined area of whether the 'inaccessible resource' language in § (g)(5) applies to licensed vehicles, contrary to the commands of § (g)(2)." An administrative notice "that attempts to settle a conflict between two specific provisions is *distinctly interpretive rather than substantive.*" *Id.* (emphasis added).

■ The court believes that the Secretary's Administrative Notice is best characterized as an interpretive rule rather than a substantive or legislative rule subject to APA procedural requirements. A conflict clearly exists between the specific application of § 2014(g)(2) and (g)(5) because a licensed vehicle can potentially fit the description of an "inaccessible resource" under § 2014(g)(5). Where such a conflict exists between two provisions, the Secretary can properly issue his interpretation of the statute and its proper application. In this case, the Secretary's Administrative Notice is simply his explanation of how these two conflicting provisions interact and therefore is best

characterized as interpretive and not substantive.

 "Although [an agency's] interpretation of the relevant statute has not been reduced to a specific regulation ... [it is entitled] to the 'considerable weight [that] should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 439, 106 S.Ct. 1931, 1938–39, 90 L.Ed.2d 428 (1986) (quoting *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782). Thus, an agency's reasonable interpretation of a statute, even though not specifically reduced to a regulation, is entitled to judicial deference. "Deference is particularly appropriate when a proceeding involves review of an agency's interpretation of its statutes and regulations."[6] *Bankruptcy Estate of United Shipping Co., Inc. v. General Mills, Inc.*, 34 F.3d 1383, 1390 (8th Cir.1994).

⬛ Although a court "may not uphold an interpretation contrary to the 'clear meaning of a statute, as revealed by its language, purpose, and history,' the agency's interpretation need not be shown to be the only permissible view." *Bailey v. Federal Intermediate Bank of St. Louis*, 788 F.2d 498, 500 (8th Cir.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986) (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979)). If an agency's interpretation "represents a *reasonable accommodation* of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Chevron*, 467 U.S. at 845, 104 S.Ct. at 2783 (emphasis in original).

In the present case, the court finds that the Secretary's interpretation that a licensed vehicle is not subject to exclusion from household financial resources as an "inacces-

sible resource" under § 2014(g)(5) is a reasonable and permissible construction of the statute. Accordingly, because the Secretary's interpretation is reasonable, it is entitled to judicial deference and must be upheld.

Upon the foregoing,

IT IS ORDERED

Defendant's February 15, 1995 motion to dismiss (docket number 11) is granted.

---

**6.** The Supreme Court has stated further that: the principle of deference to administrative interpretations has been consistently followed by this Court *whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies,* and a full understand

ing of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.
*Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782–83 (citations omitted) (emphasis added).