**Leslie A. WARREN, Plaintiff–Appellant,**

v.

**NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF SOCIAL SERVICES; Michael Espy, Secretary of Agriculture, Defendants–Appellees.**

No. 94–2462.

United States Court of Appeals,
Fourth Circuit.

Argued July 11, 1995.
Decided Sept. 22, 1995.

**ARGUED:** Curtis Brian Venable, Pisgah Legal Services, Asheville, NC, for appellant. Deborah Ruth Kant, Civil Division, United States Department of Justice, Washington, DC, for appellees. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Mark T. Calloway, United States Attorney, Barbara C. Biddle, Civil Division, United States Department of Justice, Washington, DC, for appellees.

Before MURNAGHAN, Circuit Judge, and BUTZNER and PHILLIPS, Senior Circuit Judges.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Senior Judge BUTZNER and Senior Judge PHILLIPS joined.

## OPINION

MURNAGHAN, Circuit Judge:

Appellant, Leslie Warren ("Warren"), applied for Food Stamp benefits through the Buncombe County Department of Social Services on June 3, 1993 when she lost her employment due to medical problems. At the time that she filed her application, she owned a 1992 Mazda Protege car, which had a blue book value, or fair market value, of $7,230. However, Warren owed $8,547—more than the fair market value of the car—on a loan that she had taken to finance the purchase of the car.

The agency denied Warren's application for benefits, and a state administrative appeal hearing was accordingly conducted on August 23, 1993. At the hearing, Warren contended that she had no equity in her car, and that her ownership of the car should thus not be included in the calculation of her eligibility for food stamps under the Food Stamp Act ("the Act"), 7 U.S.C. § 2014(g). The hearing officer, however, upheld the denial of benefits, finding that because the fair

market value of Warren's car exceeded the excludable $4,500 fair market value portion allowed by the Food Stamp Act, she was ineligible for food stamps under the regulations promulgated by the Secretary of Agriculture ("the Secretary").

On October 23, 1993, Warren filed the instant action in North Carolina Superior Court, requesting review of the state's decision. On February 16, 1994, the Secretary of the United States Department of Agriculture ("USDA"), intervened in the action, and removed the matter to the United States District Court for the Western District of North Carolina. In that action, Warren argued that her car constituted an "inaccessible resource" within the meaning of 7 U.S.C. § 2014(g)(5) because the lien encumbrance on the car exceeded its fair market value and, as such, was excludable from her household asset calculation.

On August 29, 1994, the district court ruled upon motions for summary judgment filed by both parties, and dismissed the action in the USDA's favor. Warren now challenges on appeal the district court's determination that a motor vehicle may not qualify as an "inaccessible resource" under 7 U.S.C. § 2014(g)(5), and thus may not be excluded from the calculation of a household's resources for purposes of determining eligibility for food stamps. This question is one of first impression in this Circuit. We affirm.[1]

The prerequisites for food stamp eligibility are set forth in the Food Stamp Act at section 2014, 7 U.S.C. § 2014. Under that provision, the allowable financial resources of a household participating in the food stamp program are limited to $2000, or if the household includes an elderly member, $3000. 7 U.S.C. § 2014(g)(1). *See also* 7 C.F.R. § 273.8(b). The Act additionally prescribes which assets shall count toward an applicant's household resources and, in § 2014(g)(2), specifically sets forth a method for assessing the resource value of a motor

vehicle according to its fair market value. In particular, § 2014(g)(2) provides:

> The Secretary shall, in prescribing inclusions in, and exclusions from, financial resources, follow the regulations in force as of June 1, 1982 (other than those relating to licensed vehicles and inaccessible resources), and *shall,* in addition, include in financial resources ... any *licensed vehicle ... used for household transportation or used to obtain or continue employment to the extent that the fair market value of any such vehicle exceeds a level set by the Secretary,* which shall be $4,500 through August 31, 1994, $4,550 beginning September 1, 1994, through September 30, 1995, $4,600 beginning October 1, 1995, through September 30, 1996, and $5,000 beginning October 1, 1996.... The Secretary shall exclude from financial resources the value of a vehicle that a household depends upon to carry fuel for heating of water for home use when such transported fuel or water is the primary source of fuel or water for the household.

7 U.S.C. § 2014(g)(2) (emphasis added).[2]

Pursuant to Congress's enactment of § 2014(g)(2), the Secretary of Agriculture promulgated certain regulations, contained in 7 C.F.R. § 273.8(h), specifically governing the treatment of automobiles for purposes of calculating food stamp eligibility. Those regulations contain several provisions relevant to the resolution of the issue before us. First, the regulations provide that the value of a licensed vehicle can be excluded from an applicant's resource determination only in certain specifically enumerated circumstances: (1) where the vehicle is used primarily for income producing purposes, such as a taxi, 7 C.F.R. § 273.8(h)(1)(i); (2) where the car annually produces income consistent with its fair market value, 7 C.F.R. § 273.8(h)(1)(ii); (3) where the car is necessary for "long distance travel, *other than daily commuting,* that is essential to the

---

1. Initially, we note that the case is not moot although Warren has, since the filing of her appeal, qualified for food stamp benefits. Under the Food Stamp Act, Warren could still recover for benefits lost during the period she was treated as ineligible if we were to adopt her arguments here.

2. The USDA regulations regard as the fair market value of a vehicle the wholesale value listed in the "publications written for the purpose of providing guidance to automobile dealers and loan companies." 7 C.F.R. § 273.8(g).

employment of a household member," 7 C.F.R. § 273.8(h)(1)(iii) (emphasis added); (4) where the car is used as the household's home, 7 C.F.R. § 273.8(h)(1)(iv); or (5) where the car is necessary to transport a physically disabled household member, 7 C.F.R. § 273.8(h)(1)(v). Moreover, the regulations provide that all licensed vehicles *not* excluded under the provisions listed above:

shall individually be evaluated for fair market value and that portion of the value which exceeds $4,500 *shall be attributed in full toward the household's resource level, regardless of any encumbrances on the vehicles.* For example, a household owning an automobile with a fair market value of $5,500 shall have $1,000 applied toward its resource level. Any value in excess of $4,500 shall be attributed to the household's resource level, *regardless of the amount of the household's investment in the vehicle, and regardless of whether or not the vehicle is used to transport household members to and from employment.*

7 C.F.R. § 273.8(h)(3) (emphasis added).

In so enacting that fair market value approach to the valuation of cars, the USDA departed from its earlier pre–1977 approach of automatically exempting from an applicant's resource calculation any licensed vehicle used for household transportation, regardless of its value. Indeed, the legislative history suggests that the 1977 amendments to the Act and its accompanying regulations were meant specifically to eradicate any previous abuse of the Food Stamp program associated with car purchases:

Currently, a licensed vehicle used for household transportation is exempt from consideration as a countable asset regardless of its value. That means that every food stamp household is entitled to own any make, model, and year of car it can afford. In addition, a food stamp household can have a second car without counting it as an asset (even the owner's equity in it) as long as the car is necessary for a household member's employment.

The Committee solution is not to deny such household a right to own and use two cars (or even more, if each additional car is deemed necessary for the employment of another household member), because the household, particularly if it resides in a rural or non-metropolitan area may, indeed, have need of two cars.... *But any car used for general household transportation would have to be included as an asset to the extent that its fair market or, more precisely in the case of automobiles, blue book value exceeded $4,500. The same would hold true for cars that are used to seek or continue employment (e.g., for job search under the work registration requirement or commuting to work or job training program)....*

H.R.Rep. No. 95–464, 95th Cong., 1st Sess. (1977), *reprinted in* 1977 U.S.C.C.A.N. 1978, 2066 (emphasis added). Additionally, the House Committee clarified:

It is not the Committee's intention in including the partial market value of some automobiles as assets to make many persons ineligible who are otherwise needy virtue of the income standards of eligibility. But the Committee does not intend either to tolerate abuses of the kind that make the program subject to public criticism. *If there is such a thing as a welfare Cadillac, there ought not to be.*

*Id.* at 2067 (emphasis added).

In a 1990 amendment to the Food Stamp Act, Congress enacted a new and separate provision, 7 U.S.C. § 2014(g)(5), which excludes certain "inaccessible resources" from an applicant's household asset calculation for purposes of determining food stamp eligibility. When enacting § (g)(5), Congress did not in any way amend the language of § (g)(2) or its accompanying regulations, *supra.* Specifically, the inaccessible resources provision, as amended in 1991, provides:

The Secretary [of Agriculture] shall promulgate rules by which State agencies shall develop standards for identifying kinds of resources that, as a practical matter, the household is unlikely to be able to sell for any significant return because the household's interest is relatively slight or because the cost of selling the household's interest would be relatively great. *Resources so identified shall be excluded as inaccessible resources. A resource shall be so identified if its sale or other disposi-*

*tion is unlikely to produce any significant amount of funds for the support of the household.*

7 U.S.C. § 2014(g)(5) (emphasis added). Although the Secretary has yet to issue formal regulations implementing that provision, the USDA has issued an Administrative Notice directing regional offices of the Food and Nutrition Service to refrain from applying § (g)(5) to vehicles, and noting instead that § (g)(2) should specifically govern the Act's vehicle exclusion policy.

At issue in the instant case is the interaction between § (g)(5) and § (g)(2) in cases in which a food stamp applicant's car is encumbered by a lien which exceeds the fair market value of the car. Although several district courts have addressed the issue, only two of those courts have determined that cars can be excluded under the inaccessible resources provision of § (g)(5). We agree with the majority of district courts which have found that § (g)(5) does not operate to exclude from an applicant's resource determination vehicles encumbered by liens. *See Cook v. Espy,* 856 F.Supp. 1095 (S.D.W.Va. 1994) (finding that a car cannot be considered under § 2014(g)(5) as an inaccessible resource even when the amount owed on the car is more than its fair market value); *Wasserman v. Glickman,* 882 F.Supp. 288 (E.D.N.Y.1995) (same); *Bizzell v. Espy,* No. LR–C–94–267 (E.D.Ark.1995) (same); *Butler v. Miller,* No. 93–40187 (E.D.Mich.1994) (same); *Beckman v. Rominger,* 891 F.Supp. 1322 (N.D.Iowa 1995) (same); *Alexander v. North Carolina Department of Human Resources,* 116 N.C.App. 15, 446 S.E.2d 847 (1994) (same). *But see Valenzuela v. Espy,* 860 F.Supp. 1421 (D.Ariz.1993) (finding that vehicles are subject to the inaccessible resources provision); *Alexander v. Espy,* 898 F.Supp. 716 (D.Nev.1995) (same). Several considerations compel such an outcome.

First, in addressing the issue presented in the instant case, we must initially look to the plain language of the relevant provisions of the Food Stamp Act for guidance. In the instant case, the provision specifically governing the treatment of vehicles, § 2014(g)(2), and its accompanying regulations, *plainly* state that a vehicle *shall* be included in an applicant's resource determination to the extent that the fair market value of the car exceeds $4,500, even when the vehicle is used for transportation to and from employment. 7 U.S.C. § 2014(g)(2). The accompanying regulations are even more explicit: they expressly state that a vehicle can be excluded from such resource calculation *only:* (1) where the vehicle is used primarily for income producing purposes, like a taxi, 7 C.F.R. § 273.8(h)(1)(i); (2) where the car annually produces income consistent with its fair market value, 7 C.F.R. § 273.8(h)(1)(ii); (3) where the car is necessary for "long distance travel, *other than daily commuting,* that is essential to the employment of a household member," 7 C.F.R. § 273.8(h)(1)(iii) (emphasis added); (4) where the car is used as the household's home, 7 C.F.R. § 273.8(h)(1)(iv); or (5) where the car is necessary to transport a physically disabled household member, 7 C.F.R. § 273.8(h)(1)(v). Indeed, the regulations state that the value of all other vehicles "shall be attributed in full toward the household's resource level, *regardless of any encumbrances on the vehicles,*" "*regardless of the amount of the household's investment in the vehicle, and regardless of whether or not the vehicle is used to transport household members to and from employment.*" 7 C.F.R. § 273.8(h)(3) (emphasis added). Thus, there is no ambiguity in the language of § 2014(g)(2) or its accompanying regulations that would suggest that a car encumbered by a lien can be excluded from a household's resource determination simply because the encumbrance exceeds the fair market value of the car.[3] Thus, standing on its own, § 2014(g)(2) is unambiguous—a vehicle such as the one at issue here must be included in an applicant's resource calculation to the extent that its fair market value exceeds $4,500.

---

**3.** As noted above, this conclusion is also supported by the legislative history, which makes clear that the statute and regulations were specifically amended so that cars such as the one owned by Warren would have to be included in an applicant's eligibility determination so as to prevent abuse of the food stamp program.

Second, however, we must examine the interaction of the unambiguous provisions of § 2014(g)(2) with the "inaccessible resources" provision enacted in § 2014(g)(5) in 1990. Indeed, the Appellant's argument in the instant case is that the enactment of § (g)(5) in 1990 somehow *altered* the plain language of § (g)(2) such that a car whose lien encumbrance exceeds its fair market value now *can* be excluded as an inaccessible resource. Nothing in the plain language of § 2014(g)(5), however, compels such a result. Indeed, the legislative history seems to suggest that § 2014(g)(5) was enacted not to change the Act's fair market value method of calculating a vehicle's resource value, but instead to remedy the problem of including in resources property that, as a practical matter, cannot be sold. *See* H.R.Rep. No. 101–916, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 5286, 5614. Specifically, Congress, in enacting § (g)(5), expressed concern with property such as "heir property," which as a practical matter, is difficult to sell and thus properly excludable as an inaccessible resource. *See* H.R.Rep. No. 569(I), 101st Cong., 2d Sess. 429–30 (1990).

■ This understanding of the limited scope of § (g)(5) is buttressed by viewing the statute in its entirety. As mentioned above, Congress provided for only certain, specifically enumerated instances in which cars can be excluded from an applicant's resource determination. *See* 7 U.S.C. § 2014(g)(2). The absence of a "lien encumbrance" exclusion in that section thus suggests that § (g)(5) did not mean to alter § (g)(2) in any way such that cars are now excludable whenever the car's lien encumbrance exceeds its fair market value. Additionally, because Congress dealt *specifically* with the valuation of automobiles in § (g)(2), that detailed method of valuation of licensed vehicles should control in the event of a conflict between the two statutory provisions. *Cook*, 856 F.Supp. at 1099–1100. Indeed, it is an elementary principle of statutory construction that a specific statutory provision controls a more general one. *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 375, 110 S.Ct. 680, 686, 107 L.Ed.2d 782 (1990). Seen in this light, it appears that the best construc-

tion of the interaction between these two provisions is that a car is not subject to the inaccessible resources provision whenever its lien encumbrance is higher than its fair market value.

Third, and related, of the two possible interpretations of the interaction between § (g)(2) and § (g)(5), the Secretary's interpretation is more sound. Warren argues that Congress intended to allow a licensed vehicle to qualify as an inaccessible resource within the meaning of § (g)(5) because that section uses the term "resource" broadly, without making any exception for automobiles. To adopt that interpretation of § (g)(5), however, would be to circumvent the plain language of § (g)(2), which states that the Secretary *shall* include in an applicant's resource calculation any licensed vehicle used for household transportation, and the accompanying regulations, which state that such vehicles must be considered regardless of the encumbrance on them. To adopt Warren's construction of the statute here would be to allow a licensed vehicle in which a household had little equity interest to qualify as an exception to § (g)(2) despite the mandatory language of § (g)(2) and *regardless of the vehicle's fair market value*. Indeed, under Warren's construction, even a "welfare Cadillac" could be excluded from an applicant's resource determination as long as the lien on the Cadillac exceeded its fair market value. Such a result would seem to defeat the entire purpose of the 1977 changes to the Act, which specifically were meant to combat such abuses by providing that cars with a fair market value of over $4,500 should be included in an applicant's resource determination to the extent that the value exceeds $4,500. Additionally, the result advocated by Warren would be particularly anomalous in light of the fact that many consumers—and certainly food stamp recipients—generally have to borrow money to purchase a car, making it inevitable that the lien encumbrance on the car will exceed the car's fair market value. The Secretary's interpretation of the statute, by contrast, gives a fuller and a more rational meaning to both § (g)(2) and § (g)(5).

Fourth, the Secretary correctly points out that since 1977, Congress has given no indi-

cation that any departure from section 2014(g)(2)'s fair market valuation method for cars is warranted. Indeed, Congress has revisited the Food Stamp Act several times, and has left section (g)(2) intact. Even after enacting the inaccessible resources provision in 1990, Congress has continued to adhere to the fair market value approach, rather than changing the valuation methodology to include a lien consideration.

■ Last, and most important, when statutes are ambiguous, such as here, it is a fundamental principle of construction that the view of the agency charged with administering the statute is entitled to considerable deference. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). To sustain the agency's interpretation, we need not find that it is the only permissible construction which the agency might have adopted or that it is the interpretation which we would have reached on our own, but only that the agency's understanding is sufficiently rational to preclude a court from substituting its own judgment for that of the agency. *Id.* Indeed, if an agency charged with a statute's enforcement interprets the statute's textual ambiguities in such a way as to accommodate conflicting policies reasonably, a court must not disturb the agency's interpretation unless it runs counter to the statutory language or the legislative history.

In the instant case, the USDA, under the express provisions of § 2014(g), is charged with administering the Food Stamp Act by promulgating rules and regulations, and thus its views are entitled to deference here. *See* 7 U.S.C. § 2014(g)(1). Although the Secretary's position has not yet been formally enacted in the form of regulations, the USDA's position has been clearly expressed in Administrative Notices to the state food stamp agencies, which state unequivocally that the inaccessible resources provision of § (g)(5) should *not* apply to motor vehicles. That view should be accorded deference by us under *Chevron* even if it is not the result that we would otherwise have reached. *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782. Additionally, the Secretary's position—that

§ (g)(5)'s inaccessible resources provision did not alter the fair market valuation method for cars put forth in § (g)(2)—does not run counter to the express statutory language or the legislative history. Indeed, as noted above, much of the language and legislative history affirmatively *supports* the Secretary's interpretation. Thus, *Chevron* deference is appropriate.

■ Warren alleges here, without merit, that the Secretary's interpretation of the statute should not be accorded deference, however, because it has not yet been reduced to a formal regulation, and is still in the form of an Administrative Notice. In essence, Warren argues that *Chevron* deference is only appropriate if the agency has promulgated a *formal rule* interpreting the statutory provision. The argument is unavailing, however, in light of the Supreme Court's holding in *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986), in which it found that the FDIC's interpretation of a statute was entitled to *Chevron* deference "[a]lthough the FDIC's interpretation of the relevant statute has not been reduced to a specific regulation...." *Id.* at 439, 106 S.Ct. at 1938–39. Thus, we decline to follow the district court's decision in *Valenzuela, supra*, since it refused to afford the USDA's Administrative Notice any deference; Warren's attempt to rely on that case here is unjustified.

For the foregoing reasons, we find that the district court did not err in affirming the denial of Warren's benefits on the ground that the agency's interpretation of the Food Stamp Act was reasonable, and thus should be given deference here. Accordingly, the judgment is

*AFFIRMED.*